Robert B. Sykes (#3180)
C. Peter Sorensen (#16728)
Christina D. Isom (#17244)
**SYKES MCALLISTER LAW OFFICES, PLLC**
311 S. State Street, Suite 240
Salt Lake City, Utah 84111
Telephone No. (801) 533-0222
bob@sykesmcallisterlaw.com
pete@sykesmcallisterlaw.com
christina@sykesmcallisterlaw.com
*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| KRISTEN CAREY,<br><br>        Plaintiff,<br><br>    vs.<br><br>DANIELL BREAKELL; M. GRIES; T. CASTELLUCCI and BRAZELL, Officers for National Park Service; and UNITED STATES DEPARTMENT OF INTERIOR, by and through its National Park Service,<br><br>        Defendants. | **COMPLAINT<br>AND<br>JURY DEMAND**<br><br>Civil No.<br><br>Judge<br><br>Magistrate Judge |

Plaintiff Kristen Carey, through counsel, complain against Defendants as follows:

## PRELIMINARY STATEMENT

The following allegations are based upon the undersigned's understanding of the information presently available. This is a civil rights action in which the Plaintiff seeks relief for Defendants' violation of her rights guaranteed by the United States Constitution, specifically the Fourth and Fourteenth Amendments. These rights are further secured by the Civil Rights Act of

1871, codified as 42 U.S.C. § 1983 and § 1988.  This action also seeks relief under the law, statutes and Constitution of the State of Utah, specifically Article I, §§ 9 and 14.

## JURISDICTION AND VENUE

1. This action arises under the United States Constitution and federal law, particularly under the provisions of the Fourth and Fourteenth Amendments to the Constitution of the United States, and 42 U.S.C. §§ 1983 and 1988.

2. This action also arises under the Constitution of the State of Utah Article I, §§ 9 and 14.

3. This action seeks redress for violations of the civil rights laws of the United States, and jurisdiction is therefore invoked pursuant to 28 U.S.C. §1343 and 42 U.S.C. §1983.

4. As to the State Constitutional claims, this Court's supplemental jurisdiction is invoked under 28 U.S.C. §1367.

5. The claims made in this Complaint occurred and arose in the State of Utah, in this District, and in the Southern Division. Venue for the federal claims is therefore proper under 28 U.S.C. §§ 1391 and 1331. Venue for the State claims is proper under 28 U.S.C. §1367.

6. Plaintiff is seeking damages pursuant to the claims for relief specified below in amounts to be proved at trial.

7. This Court has authority to award costs and attorney fees pursuant to 42 U.S.C. §1988, and pursuant to the Court's inherent power under State law.

8. This action also seeks redress for violations of Plaintiff's constitutional rights secured by the Utah Constitution. This Court further has pendent jurisdiction over any and all State claims.

2

**PARTIES**

9.      Plaintiff **Kristen Carey** ("Kristen") is a resident of South Carolina.

10.      Defendant **Danielle Breakell** ("Breakell") was at all relevant times herein an officer with the National Park Service Department, a department of the United States Department of Interior, operating in the course and scope of her employment, and under the color and guise of the laws of the United States.

11.      Defendant **T. Castellucci** ("Castellucci") was at all relevant times herein an officer with the National Park Service Department, a department of the United States Department of Interior, operating in the course and scope of his employment, and under the color and guise of the laws of the United States.

12.      Defendant **M. Gries** ("Gries") was at all relevant times herein an officer with the National Park Service Department, a department of the United States Department of Interior, operating in the course and scope of his employment, and under the color and guise of the laws of the United States.

13.      Defendant **Brazell** ("Brazell") was at all relevant times herein an officer with the National Park Service Department, a department of the United States Department of Interior, operating in the course and scope of his employment, and under the color and guise of the laws of the United States.

14.      Defendant **United Stated Department of the Interior** ("DOI") through the National Park Service Department (NPS), one of its departments. DOI, through the actions of NPS, is a "person" within the meaning of 42 U.S.C. §1983. Officers Breakell, Castellucci, Gries and Brazell were at all times "state actors."

3

**FACTUAL ALLEGATIONS**

15.     On August 22, 2023, Kristen Carey was stopped by National Park Service (NPS) Law Enforcement while driving on Highway 89, one mile inside the Utah state line in the Glen Canyon National Recreation Area.

16.     Ms. Carey had just finished swimming at Lone Rock Bear in Lake Powell near the Utah and Arizona border.

17.     Carey was headed towards a pharmacy in Page, Arizona for her job to retrieve some personal prescription medications.

18.     Carey works as a traveling nurse, which requires her to leave home for several months at a time.

19.     Carey was initially stopped by Officer Danielle Breakell for an alleged speeding violation.

20.     Breakell approached Carey's vehicle and asked for her license and registration.

21.     Breakell ran Carey's license, and it was flagged for being suspended.

22.     Carey had no idea that her license was temporarily suspended.

23.     Later, Carey found out the suspension was based on technicality, because she had not paid her registration fees in a timely manner, due to being in another state.

24.     During one of Carey's recent jobs out of her home state, her registration became due, and she was unaware. This caused her payment to be late, and the State temporarily administratively suspended her driver's license.

25.     Breakell asked Carey to step out of her car.

26.     Carey calmly complied and got out of her car.

4

27. Since Carey was only wearing a swim top and swim bottom, Officer Breakell allowed her to put on shoes and a swim skirt.

28. While Carey was standing on the side of the road, she noticed that other officers with the National Park Service were on the scene.

29. Breakell was accompanied by Officers M. Gries, T. Castellucci, and Brazell.

30. Breakell did not arrest Carey based on the suspended license.

31. Breakell should have ended the stop when she did not arrest Carey based on the suspended license violation.

32. However, Breakell expanded the stop unreasonably to conduct an investigation for allegedly driving under the influence.

33. Carey had given no indication that she was under the influence of alcohol or drugs.

34. Breakell had no probable cause to expand the detention of Carey to investigate a DUI.

35. Officers T. Castellucci and Brazell arrived after Officer Gries and Breakell indicated there was an investigation for driving under the influence in the jurisdiction of Glen Canyon National Recreation Area.

36. Breakell, without probable cause, asked Carey to perform field sobriety tests.

37. Carey completed the field sobriety tests.

38. Carey refused to perform a portable breath test, which she has a right to refuse.

5

39.     Breakell then placed Carey under arrest for a suspected DUI.

40.     Carey was not intoxicated.

41.     Carey had committed no crime.

42.     Carey was respectful and cooperative during the entire interaction with NPS Officers.

43.     Breakell had no probable cause to arrest Carey for DUI.

44.     Breakell then, without probable cause of contraband, conducted an illegal body cavity search on Carey.

45.     The body cavity search took place, on the side of the highway, in plain view of the other male officers and passing cars.

46.      Breakell, without warning, stuck her fingers up both Carey's vagina and anus.

47.     Carey asked if she was going to "check her vagina" to which Breakell responded "Yes" and forcefully inserted her finger back into Carey's vagina a second time.

48.     Breakell performed multiple improper body cavity searches on Carey.

49.     Carey never consented to the search.

50.     There was not probable cause to suspect Carey had concealed any evidence with a suspected DUI.

51.     Breakell then informed Carey she was under arrest and took her into custody.

52.     There was no legitimate reason for Breakell to conduct a body cavity search on Carey on the side of the highway, in plain view of the public, passing motorists, with other officers watching.

6

53.     This cruel, dehumanizing, and humiliating assault caused Carey great distress, violation, mental anguish and emotional and physical damage.

54.     Breakell's body cavity search was clearly against the constitutional protections of the United States and NPS policies and procedures on the proper methods of searching individuals upon arrest.

55.     NPS did not train Breakwell in proper methods of arrest, detention, and search of individuals.

56.     Because of NPS's failures, Carey suffered an unreasonable, dehumanizing body cavity assault in full view of the public, on the side of the highway.

## FIRST CAUSE OF ACTION

### ~*Illegal Arrest*~

***Violation of the Fourth Amendment, Against Officer Breakell in Her Individual Capacity and the United States, Cognizable under 42 U.S.C. §1983.***

57.     Plaintiff incorporates all other paragraphs herein.

58.     In *Oliver v. Woods,* 209 F.3d 1179, 1186 (10th Cir. 2000), the 10th Circuit stated "[t]he Supreme Court has identified three types of police/citizen encounters: consensual encounters, investigative stops, and arrests." An investigative detention is "a seizure within the meaning of the Fourth Amendment but, unlike an arrest, it need not be supported by probable cause. *Id.* An officer "can stop and briefly detain a person for investigative purposes if the officer has reasonable suspicion supported by articulable facts that criminal activity may be afoot, even if the officer lacks probable cause." *Id.* For an officer to have reasonable suspicion to seize an individual, the officer "must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Id.*

7

59.      Detaining or arresting someone without individualized and articulated grounds is **per se unreasonable** under the Fourth Amendment.

60.      A warrantless arrest is permissible when an officer "has probable cause to believe that a person committed a crime." *Cortez v. McCauley,* 478 P.3d 1108, 1115 (10th Cir. 20007) (quoting *Romero v. Fay,* 45 F.3d 1472, 1476 (10th Cir. 1995).

61.      For an officer to seize an individual, the officer "must have a particularized and objective basis for suspecting the particular person … of criminal activity." *Oliver v. Woods,* 209 F.3d 1179, 1186 (10th Cir. 2000) (emphasis added).

62.      Breakell detained and arrested Carey without reasonable suspicion or probable cause.

63.      Carey was initially stopped by National Park Service Officers for an alleged speeding violation.

64.      After completely cooperating with Breakell and providing her license. It was discovered that Cary's license had been suspended in South Carolina based on administrative technicality. 1.

65.      Breakell expanded the detention of Carey based on the suspended license.

66.      Breakell could have placed Carey under arrest for this alleged traffic infraction but did not.

67.      Breakell should have ended the interaction with Carey at this point because she did not have any particularized fact to indicate any other criminal activity beyond the suspended license.

---

1 Carey was late paying for her registration because of her job as a travel nurse. Her job pulls her away from home for months at a time and as a result she was late on her registration.

8

68. However, Breakell, for no apparent reason, and without probable cause, or reasonable suspicion, continued to detain Cary to perform a field sobriety test.

69. Carey had not shown any indication that she was under the influence.

70. There was no probable cause to give Carey a field sobriety test at this point of their interaction.

71. Nothing in the report states that Carey was exhibiting signs of being intoxicated, thus providing any probable cause for Breakell to continue to detain Carey.

72. Carey was not abusive or belligerent in any demonstrable way.

73. After this illegally expanded detention, Carey was placed under arrest for DUI.

74. There was absolutely no reason to extend the detention of Carey when she was initially stopped for a traffic violation.

75. Officers had no reasonable suspicion of wrongdoing, outside of the traffic violation.

76. Such violation of Plaintiff's rights is actionable under 42 U.S.C. '1983, and Carey is entitled to judgment against Defendants under that section for damages in an amount to be proved at trial.

77. Carey is entitled to attorney fees and costs against Defendants under 42 U.S.C. '1988.

78. Further, this violation was intentional, malicious, and/or reckless, and Defendants are therefore subject to punitive damages for this violation.

## SECOND CAUSE OF ACTION

### ~ *Illegal Strip Search and Outrageous Conduct* ~

### *Violation of the Fourth and Fourteenth Amendments*
### *Against Officer Breakell in her Individual Capacities*

### Cognizable Under 42 U.S.C. § 1983

79.     Plaintiff incorporates all other paragraphs herein.

80.     When a person is taken into custody, but before the person is admitted into the general jail population, the Fourth and Fourteenth Amendments prohibit conduct that is unreasonable with respect to that person.

81.     The Tenth Circuit has been very clear "that a strip search is an invasion of personal rights of the **first magnitude**." *Chapman v. Nichols,* 989 F.2d 393, 395 (10th Cir. 1993) (emphasis added).

82.     "[A] strip search of a person arrested for driving while under the influence of drugs but not placed in the general jail population is **not justified** in the absence of reasonable suspicion that the arrestee has drugs or weapons **hidden on his or her person**." *Foote v. Spiegel,* 118 F.3d 1416, 1425 (10th Cir. 1997) (emphasis added).

83.     In *Cottrell v. Kaysville City*, 994 F. 730, 735 (10th Cir. 1993), the Court clearly stated that the "overriding concerns in conducting a strip search are security and concealed contraband." A strip search is strongly proscribed when there is no "reasonable suspicion of drugs or weapons." *Id.* Moreover, in most cases, anything that could have been found by intake officers, "would already have been discovered during the pat down search." *Id.*

84.     There was no conceivable or reasonable justification for Officers to perform a roadside body cavity search on Carey. This conduct shocks the conscience.

10

**85.**     Officers had no inkling or reason to believe that Ms. Carey was hiding anything on her person and there was no allegation that she had a weapon or contraband.

**86.**     Carey was wearing a swimsuit when Officers first detained her. It was clear she was not concealing anything on her body.

**87.**     Courts consider "the scope of the intrusion, the manner in which it was conducted, the justification for initiating the search, and finally the place where the search took place." *Cottrell v. Kaysville City, Utah,* 994 F.2d 730 (10th Cir. 1993) (quoting *Bell v. Wolfish*, 441 U.S. 520, 559 (1979).)

**88.**     Carey was forced to endure a humiliating illegal body cavity search on the side of the public road with other male officers watching only a few feet away.

**89.**     Breakell had no possible reason to perform the search at all, let alone in public and in front of other officers.

**90.**     Breakell's actions were a dehumanizing, humiliating assault on Carey's privacy and person.

**91.**     This behavior shocks the conscience and is a clear violation of the protections from unreasonable searches and Carey's due process rights under the Fourth and Fourteenth Amendments.

**92.**     The conduct of these Defendants warrants the imposition of punitive damages as may be allowed by law.

## THIRD CAUSE OF ACTION

### ~*Sexual Assault*~

*Violation of the Fourteenth Amendment Against Officer Breakell in her Individual Capacity, Cognizable Under 42 U.S.C. §1983.*

93.     Plaintiff incorporates all other paragraphs herein.

94.     The Fourteenth Amendment's Equal Protection Clause prohibits public officials, including police officers, from sexually assaulting private citizens.

95.     "It is firmly established that a defendant acts under color of law when *he abuses the position given to him by the State." Johnson v. Martin*, 195 F.3d 1208, 1218 (10th Cir. 1999) (italics in original) (quoting *West v. Atkins,* 487 U.S. 42, 49-50 (1988)).

96.     Officer Breakell sexually assaulted Ms. Carey by improperly performing a body cavity search without probable cause or reasonable suspicion.

97.     Ms. Carey was shocked and traumatized by this assault and did not consent to the search.

98.     Officer Breakell abused her law enforcement position by forcing Ms. Carey to undergo an improper body cavity search.

99.     Carey has been violated, damaged and humiliated by Breakell's actions.

100.    This behavior shocks the conscience and is a clear violation of the protections from unreasonable searches and Carey's due process rights under the Fourth and Fourteenth Amendments.

101.    The conduct of these Defendants warrants the imposition of punitive damages as may be allowed by law.

# FOURTH CAUSE OF ACTION

## ~*Battery*~

*Against Officer Breakell*

102. Plaintiffs incorporates by reference all other paragraphs herein.

103. The Utah Supreme Court has stated: "an actor is liable for battery if (a) he acts intending to cause a harmful or offensive contact with the person of the other . . . or an imminent apprehension of such contact, and (b) a harmful contact with the person of the other directly or indirectly results." *Reynolds v. MacFarlane*, 2014 UT App 57, ¶12, 322 P.3d 755, 759 (quoting Restatement (Second) of Torts §13 (1965)).

104. "For the intention tort of battery, harmful or offensive contact includes all physical contacts that the individual either expressly communicatees are unwanted or those contacts to which no reasonable person **would consent**." *Id.*

105. Breakell battered Carey when she intentionally, illegally, roughly, and unnecessarily forced her fingers up Ms. Carey's vagina and anus.

106. Any reasonable person would agree this was harmful and offensive.

107. Ms. Carey did not consent to being touched and no reasonable person would have consented.

108. Officer Breakell intended to cause and did cause harmful contact with Carey.

109. Carey is entitled to damages for this heinous act.

110. As a proximate result of the conduct, Ms. Carey has been damaged as stated herein.

## FIFTH CAUSE OF ACTION

### *~Unlawful or Deficient, Policies Procedures and/or Protocols~*

*Against United States Department of the Interior and National Park Service*

111.    Plaintiff incorporates by reference all other paragraphs herein.

112.    Defendant United States had a duty to enforce policies and procedures within each of the executive agencies of the United States Government.

113.    This duty is not a discretionary function.

114.    The Park Rangers' policies, and procedures allowed or tolerated illegal strip searches, and body cavity searches, on individuals without particularized probable cause, including the illegal body cavity search of Ms. Carey.

115.    While conducting the illegal and intrusive strip search on the side of the highway explained that the search was normal procedure.

116.    Officers who enforce the rule of law should be informed that strip searches are only allowed under very particular circumstances.

117.    The lack of proper supervision by the United States Department of the Interior on the National Park Service was the proximate cause of the severe and unnecessary violations suffered by Carey as set forth above.

118.    The actions of these Defendants as described above caused the injuries and damages to Ms. Carey as described above.

14

## SIXTH CAUSE OF ACTION

### ~ *Failure to Train and/or Supervise* ~

### *Against The United States Department of the Interior, through the National Park Service Relating to Defective Policies, Customs or Practices*

### Cognizable Under 42 U.S.C. §1983

117.    The allegations contained in all above paragraphs are incorporated herein by reference.

118.    On August 22, 2023, as described above, NPS, through Officers Breakell, M. Gries, T. Castellucci, and Brazell., perpetrated an outrageous and unreasonable seizure against Carey, followed, later, by an illegal strip search.

119.    There was no reason for the Defendant Officers to extend the simple traffic stop to an investigation for DUI, resulting in the unnecessary arrest of Carey.

120.    Further, there was no reason for Deputy Breakell to conduct an *__illegal public__* strip search of Carey or to allow other Officers watch.

121.    NPS had a duty to fully and adequately train and supervise their officers to adhere to the proscriptions against unreasonable seizures, illegal arrests, and illegal strip searches, in accordance with clearly established law pursuant to the Fourth and Fourteenth Amendments to the United States Constitution as well as Article I, Sections 9 and 14 of the Utah Constitution.

122.    NPS knowingly and recklessly failed to adequately train and/or supervise their Officers to adhere to the proscriptions against illegal and unreasonable seizures and arrests, illegal strip searches and other prohibited conduct in accordance with clearly established law pursuant to the Fourth and Fourteenth Amendments.

15

123.    The failure of NPS to train and supervise its Officers to adhere to these proscriptions demonstrates a reckless and deliberate indifference to the rights of the people they claim to be protecting, including Kristen Carey and her rights.

124.    The failure of NPS to fully and adequately train and supervise its Officers and/or enforce its policies, procedures, and/or protocols, if they exist, proximately caused Carey's injuries.

125.    The unreasonable and illegal seizure, arrest and strip search of Carey described herein reflects practices or customs informally and customarily condoned by NPS, which practices and customs consist of allowing their officers to search and seize persons for whom they have no probable cause to believe are committing crimes, without any resulting disciplinary actions.

126.    NPS were knowingly and deliberately indifferent toward the proper training and supervision of their officers and deputies, particularly in the reasonableness of searches and seizures of persons.

127.    The effect of this indifference was to expose innocent individuals to unreasonable seizures of their persons, such as occurred in this case.

128.    Inaction by NPS and toleration of the bad behavior of their departments and employees provides at least tacit approval to employees such as Defendant Officers that such behavior is condoned and approved.

129.    As such, NPS are also liable to Carey for the illegal seizure perpetrated by HCPD and the illegal search she had to endure under the auspices of the NPS.

130.    The conduct of these Defendants warrants the imposition of punitive damages such as may be allowed by law.

## SEVENTH CAUSE OF ACTION

### *~ Violation of State Civil Rights ~*

### *Against all Defendants*

### ~ Pursuant to the Court's Supplemental Jurisdiction
### Under 28 U.S.C. §1367 ~

131.   The allegations contained in all above paragraphs are incorporated herein by reference.

132.   Defendants are individuals and entities who were acting under color of law throughout the duration of the events described above.

133.   Article I, Section 7 states in relevant part: "No person shall be deprived of life, liberty, or property, without due process of law."

134.   As a result of the arrest by Officer Breakell Defendants violated Carey's rights under Article I, Section 7.

135.   This violation was perpetrated upon Carey even though she had committed no crime and presented no danger to NPS officers, or anyone else.

136.   Article I, Section 9 states in relevant part: "[N]or shall cruel and unusual punishments be inflicted. Persons arrested or imprisoned shall not be treated with unnecessary rigor."

137.   Carey was "arrested" under Utah law when Officer Breakell told her she was under arrest, and when she was physically assaulted, handcuffed and detained as stated herein.

138.   Carey was forced to endure unnecessary rigor while being subjected to an illegal public strip search by Breakell while, at the same time, four male NPS officers were watching on the side of the road.

**139.** The violations of Carey's rights by Defendants, as described herein, are specifically prohibited by the Utah Constitution and other statutes and law and such violations entitle Carey to compensatory damages, statutory civil penalties and attorney's fees as may be allowed by law.

**140.** Defendants acted willfully and with reckless disregard for Carey's rights and well-being. Carey is therefore entitled to an award of punitive damages against Defendants for the purpose of punishing Defendants and to deter them and others from such conduct in the future.

## INJURIES AND DAMAGES

**141.** Carey was unreasonably assaulted, handcuffed, arrested and searched maliciously without probable cause.

**142.** Carey was subjected to an illegal strip search which, additionally, was conducted while male officers were allowed to stand nearby and watch.

**143.** Carey was subjected to unnecessary rigor while in custody by being subjected to the illegal strip search including male Officers watching while the search was ongoing.

**144.** Because of these unnecessary and unreasonable actions, Carey has suffered severe mental and emotional damage, humiliation, economic damage, reputational damage and now suffers from PTSD.

## JURY DEMANDED

Plaintiff demands a Jury Trial on all Causes of Action included herein.

## REQUESTS FOR RELIEF

**WHEREFORE,** Plaintiff prays judgment against Defendants as follows:

1. For general and compensatory damages in an amount to be determined at trial;

**2.**      For special damages as are shown at trial and as may be allowed by law;

**3.**      For punitive damages against Defendants as may be allowed by law and as are shown at trial;

**4.**      For pre-judgment interest on the damages assessed by the Court, as allowed by law;

**5.**      For Plaintiff's costs and reasonable attorney fees incurred herein, pursuant to 42 U.S.C. 1988; and as otherwise may be allowed by Utah State or federal law; and,

**6.**      For such other and further relief as the Court deems just and proper.

DATED this 12ᵗʰ day of September, 2025.


                    **SYKES McALLISTER LAW OFFICES, PLLC**


                    */s/ C. Peter Sorensen*
                    ROBERT B. SYKES
                    C. PETER SORENSEN
                    CHRISTINA D. ISOM
                    *Attorneys for Plaintiffs*